**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-41060
Summary Calendar
_____


SYED HUSSAINI,

Plaintiff-Appellee,

VERSUS

MARINE TRANSPORT LINES, INCORPORATED;
MARINE TRANSPORT MANAGEMENT, INCORPORATED;
MARINE PERSONNEL & PROVISIONING COMPANY;
MARINE SULPHUR SHIPPING CORPORATION;
and
JOSEPH HOOD,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Texas
(G-96-CV-345)
_____

September 8, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Invoking admiralty jurisdiction, Syed Hussaini sued Marine Transport Lines, Incorporated ("MTL"), and others for injuries sustained from a fall aboard the M/V Marine Duval.  The district court found that the fall was caused by Hood's physical contact

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

with Hussaini during a verbal altercation and held MTL vicariously liable under the theory that Hood was acting within the scope of his employment. The court also found that the negligence of MTL and the unseaworthiness of the M/V Marine Duval were additional causes of Hussaini's injuries, so the court held MTL and Hood jointly and severally liable. We affirm in part, vacate in part, and remand.

## I.

Hussaini was an able-bodied seaman of twenty-five years' experience, in good physical condition, when he joined the M/V Marine Duval as a sixty-day relief seaman. His responsibilities required him to bend, stoop, squat, climb, and lift on a regular basis.

Hussaini assisted Second Mate Jones in loading the M/V Marine Duval with molten sulphur, performing his duties without any sign of injury. Chief Mate Hood berated Hussaini because the vessel's gangway had not been taken down. The court found that at some point during this confrontation, Hood made physical contact with Hussaini, causing Hussaini to fall backwards and strike his head and neck against the gangway davit, causing injury.

## II.

### A.

Defendants contend the court erred in finding the M/V Marine Duval unseaworthy, because the evidence did not show that Hood was

"savage and vicious," a predicate to such a finding. *See Miles v. Melrose*, 883 F.2d 976, 981 (5th Cir. 1989), *aff'd sub nom. Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). A preliminary question to this issue is the appropriate standard of review, also contested by the parties. We conclude that the appropriate test is the "clearly erroneous" standard.

We apply the clearly erroneous standard to review a determination of seaworthiness. *Verdin v. C & B Boat Co.,* 860 F.2d 150, 154 (5th Cir. 1988). Moreover, even if seaworthiness were a mixed question of law and fact, the clearly erroneous standard applies when factual questions predominate. *American Int'l Trading Corp. v. Petroleos Mexicanos,* 835 F.2d 536, 539-40 (5th Cir. 1987). Such is usually the case where the seaworthiness determination turns largely on the temperament of a particular officer, for "courts rarely determine whether as a matter of law the temperament of a seaman renders a vessel unseaworthy," *Miles*, 882 F.2d at 982 (5th Cir. 1989), which is the circumstance we consider here. Because there is evidence from which a reasonable person could conclude that Hood's temperament rendered the M/V Marine Duval unseaworthy, there is no clear error in the district court's determination.

### B.

The factual finding that Hood pushed or otherwise made contact with Hussaini, and that this contact caused Hussaini to fall, is supported by the record. Finding no clear error, we uphold the

3

finding.

## C.

A seaman may not recover against a co-employee for negligence. *Roth v. Cox*, 210 F.2d 76, 78 (5th Cir. 1954), *aff'd*, 348 U.S. 207 (1955). It is uncertain, however, whether the district court found that Hood acted negligently or intentionally.[1] Because neither finding would be clearly erroneous under the facts of this case, we cannot substitute our reading of the facts for those of the district court; as we are unable to ascertain precisely what conclusion the court reached regarding the nature of Hood's contact with Hussaini, we remand this issue for clarification.

## D.

The issue of MTL's vicarious liability raises a mixed question of law and fact. Applying the applicable standards of review, we uphold the district court's findings and conclusions, thereby affirming that Hood acted within the scope of his employment, making MTL vicariously liable for his actions.

Determinations of scope of employment, and, thus, vicarious liability, are most accurately characterized as mixed questions of law and fact because they involve legal conclusions based upon

---

[1] *Compare* the court's statement that it "believes that the Chief Officer [Hood] may have in a moment of exasperation physically contacted the Plaintiff in a negligent and tragic manner that caused his gravitational collapse upon the rail and davit in such a way as to cause a wholly unintended injury" with the statement that "[t]he Court finds that the Chief Mate Hood, Plaintiff's superior, assaulted Mr. Hussaini in the furtherance of the ship's business."

4

factual analysis. Mixed questions should be reviewed under the clearly erroneous standard if factual questions predominate, and *de novo* if the legal questions predominate. *Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273, 1296 n.106 (5th Cir. 1994); *American Int'l Trading Corp. v. Petroleos Mexicanos,* 835 F.2d 536, 539-40 (5th Cir. 1987).

When, however, the district court has plainly identified its findings of fact, separately and distinctly from its legal conclusions, we may properly proceed with *de novo* review of the legal conclusions, even if the underlying facts are in dispute. This does not encroach upon the district court's factfinding function, but rather fulfills our obligation to review the interpretation and application of the law. In such instances, the "mixed" questions of law and fact have been "unmixed" by the district court, enabling us to review the factual components under the clearly erroneous standard, and the legal components *de novo*. *See In re Incident Aboard D/B Ocean King,* 813 F.2d 679, 688-89 (5th Cir. 1987).

The court found that a dispute between Hood and Hussaini immediately precipitated the incident giving rise to this injury. This dispute centered on Hussaini's failure to take in the vessel's gangway. Because these findings are supported by the record, we uphold them under the clear error standard.

The legal question whether Hood's altercation and subsequent physical contact with Hussaini fell within the scope of Hood's duties as Chief Officer, thereby giving rise to MTL's vicarious

5

liability, is reviewed *de novo*.  We conclude that, based on the findings of fact, Hood's acts were taken in furtherance of his duties, either as his effort to get Hussaini to take the gangway in, or to discipline Hussaini for failing to do so.  We note that a shipowner is vicariously liable for even the "misuse of excessive force" by one of its seamen, so excessiveness on Hood's part cannot shield MTL of liability.  *Waterman S.S. Corp. v. Casbon*, 417 F.2d 1040, 1041 (5th Cir. 1969).  Moreover, whether Hood's acts are deemed negligent or intentional, MTL's liability remains; a shipowner is liable for even the wrongful, intentional torts of its seamen, if committed "in furtherance or in an attempt to further" the shipowner's business.  *Lykes Bros. S.S. Co. v. Grubaugh*, 128 F.2d 387, 391 (5th Cir. 1942).

 MTL's citations to *Lambert v. Morania Oil Tanker Corp.*, 677 F.2d 245 (2d Cir. 1982), *Waltners v. Moore McCormack Lines, Inc.*, 309 F.2d 191 (2d Cir. 1962), and *Stoot v. D&D Catering Serv.*, 618 F. Supp. 1274, *aff'd*, 807 F.2d 1197 (W.D. La. 1985), are not persuasive.  None of these addresses facts similar to these: an altercation between a superior and a subordinate, motivated by the efforts of the former to either command or discipline the latter. In this situation, vicarious liability is correctly imposed, because the protagonist was acting pursuant to his duties as a superior, and therefore within the scope of his employment.

E.

Defendants argue that in awarding Hussaini $21,282.68 in

medicals, the district court abused its discretion in relying upon a plaintiff's exhibit that is a compilation of Hussaini's medical expenses. While these medical records constituted inadmissible hearsay, their use for demonstrative purposes in allowing Dr. Cupic, Hussaini's treating physician, to testify to the reasonableness of Hussaini's medical expenses was permissible. The fact that Hussaini's counsel directed Cupic to line-items of these medical bills in eliciting his testimony, without stating for the record the dollar amounts to which he was referring Cupic, did not preclude the court from taking into account these specific dollar amounts as if they had been read to Cupic in open court.

## F.

The court awarded Hussaini $30,800 for lost income during a one-year period of convalescence following his injury, and $61,600 for two years' vocational retraining. These awards are not clearly erroneous, given the record before us.

MTL correctly notes, however, that the court failed to discount the $61,600 by the appropriate amount (6%), as per *Culver v. Skater Boat Co.*, 722 F.2d 114, 122 (5th Cir. 1983). Given the fact that the court plainly found that Hussaini's lost wages for the upcoming year would be $30,800, it was improper simply to multiply this amount by two to arrive at Hussaini's lost income figure for the proceeding two years, without taking into account the time value of money. Therefore, the $30,800 award for convalescence is not erroneous, but the $61,600 award is vacated

7

and remanded with instruction that the district court discount that amount in accordance with *Culver*.

## G.

The testimony of Hussaini's medical expert revealed that because of his injury, Hussaini would suffer from pain for the remainder of his life (twenty-four years, given his life expectancy). The medical and physical therapy costs of alleviating this pain were estimated to be approximately $1,000 to $1,500 per year. Therefore, an award of $30,000 for future analgesic care would not have been clearly erroneous by itself.

In addition to the $30,000, however, the trial court awarded $20,000 to cover the cost of an operation to treat Hussaini's injury. Hussaini's expert, Cupic, testified that such an operation would reduce Hussaini's pain significantly. When asked to describe Hussaini's need for future analgesic treatments following such an operation, Cupic responded: "It's certainly not going to be nearly as much." Cupic's testimony, the only testimony bearing upon Hussaini's future medical and analgesic costs, indicates that the court committed clear error in awarding both full analgesic costs and medical costs. Given that we uphold the finding that Hussaini would most likely need to undergo the pain-relieving operation referred to above, thereby entitling him to the $30,000 award, we remand the $20,000 award for redetermination. For this reason, appellant's argument regarding the failure to apply the 6% discount rate to its future analgesic costs award is moot.

8

The judgment is AFFIRMED in part, VACATED in part, and remanded.